IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RAY PARSONS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-0828-CV-W-HFS |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

**I.     Procedural Background**

On October 4, 2000, plaintiff applied for disability benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, et seq. ((Tr. 43-45). Plaintiff alleged a disability onset date of April 27, 1999, due to pain in his neck, shoulders, and elbows. (Tr. 52). Plaintiff's application was denied (Tr. 19A-23), and plaintiff timely requested a hearing. On December 19, 2002, a hearing was held (Tr. 381-405), and by a decision dated June 27, 2003, the Administrative Law Judge ("ALJ") determined that although plaintiff was incapable of returning to his past relevant work, he retained the residual functional capacity ("RFC") to perform unskilled jobs performed at the light exertional level. (Tr. 18-19). For the reasons set forth herein, the decision of the ALJ is affirmed.

**II.    Factual Background**

The facts as set forth in the parties' briefs are thoroughly presented, and will be merely summarized here.

Plaintiff's Testimony

Plaintiff was initially questioned by non-attorney representative, Cynthia Lawchowski. At the time of the hearing, plaintiff was 52 years of age, and had completed the twelfth grade of school. (Tr. 383). He stood 6'2" and weighed 218 pounds. (Tr. 384). Plaintiff estimated that he drove 30 miles a week, and experienced difficulty when attempting to turn his neck to check the side view. (Id). In the past 15 years, plaintiff worked as a checker, stock man, fork truck operator, and a receiver of production. (Tr. 385). He performed these jobs while sitting, standing, and walking; the heaviest weight he lifted was 180 pounds, but on average, he lifted 35 to 50 pounds. (Tr. 385). As a checker, plaintiff was required to lift the tire a short distance, and tilt it to make sure it was the correct tire to be shipped. (Id). He performed this function, with paperwork in one hand, and bending over to inspect the tire with the other hand. (Tr. 386). On April 27, 1999, he stopped work due to a neck injury and feeling tired all the time. (Id). Plaintiff further testified that he was ordered to stop work by his doctor. (Id). As to the present time, plaintiff did not feel he could work due to feeling tired, lethargy, and pain in his shoulders. (Id).

In May of 1999, plaintiff underwent surgery for a cervical discectomy with fusion at C3 through C5. (Tr. 387). He then spent 6 weeks in a neck brace, and attended a therapy rehabilitation program for 8 months, 5 days a week. (Id). Plaintiff did not feel that the surgery relieved the pain in his neck and shoulders, and he did not continue treatment with the orthopedic surgeon, Dr. Zarr, who advised him that nothing more could be done, until the pain became unbearable, in which case

treatment with cortisone shots could begin. (Tr. 387-88). Dr. Zarr then released him back to work, but restricted lifting to 40 pounds, overhead lifting to 35 pounds, and only occasional overhead reaching and crawling. (Tr. 388). Plaintiff's employer, Goodyear, did not continue his employment due to the weight restrictions. (Id). Plaintiff did not think he could work elsewhere because of fatigue and pain. (Id).

Plaintiff estimated that he could walk a distance of a quarter of a mile to half a mile before needing to rest for 10 to 15 minutes. (Tr. 388-89).He could stand for 10 to 15 minutes, and could sit for only 15 to 20 minutes before standing up. (Tr. 389-90). Plaintiff experiences numbness in his fingers when he attempts to grip an object with his right hand or writes. (Tr. 390-91). He can lift 10 pounds up to his waist. (Tr. 390). He takes a nap daily for about 1 hour due to fatigue. (Tr. 390). Plaintiff generally rises at 7:00a.m., feeds the dogs, and has coffee. (Tr. 392). He does laundry once a week, cooks on the grill, goes grocery shopping with his wife. (Tr. 392-93). He is able to hand mow the lawn, but needs to take breaks to rest. (Tr. 393). He can no longer play softball and rebuild older cars. (Id). Plaintiff testified that he feels the pain is getting worse, and some days it is difficult to wash his face and brush his teeth due to pain in his shoulder and numbness. (Tr. 394).

When questioned by the ALJ, plaintiff testified that he usually goes to bed at 10:00 p.m., but is unable to have a restful sleep, and on average, sleeps 3 to 5 hours. (Tr. 394-95). The only medication plaintiff takes for pain is Advil or Aleve. (Tr. 395-96). The pain began in 1992, and he visited a doctor at Goodyear, a chiropractor, and a spine specialist. (Tr. 396). Plaintiff was employed at Goodyear for 32 years. (Id). Plaintiff also experiences pain in his knees, as well as a dull throb in his hip. (Tr. 397-98).

Testimony of the Vocational Expert

The vocational expert, Amy Salva, testified that the position of warehouseman is considered to be medium level, unskilled, but as described by plaintiff, was in the heavy to very heavy range. (Tr. 399). The position of checker was considered to be semi-skilled, light level, and the position of forklift operator was considered to be semi-skilled, medium level. (Tr. 399-400).

The ALJ asked Ms. Salva to assume a hypothetical person of plaintiff's age, education, and work experience who could lift and carry 20 pounds occasionally, 10 pounds frequently, and could stand, sit, and walk for 6 hours in an 8 hour work day. (Tr. 400). The individual was precluded from performing any work requiring overhead work, or neck rotation, and could only occasionally crawl or reach. (Id). Ms. Salva opined that such an individual could not perform plaintiff's past work, and held no transferable skills from past work ; but such an individual could perform other work in the unskilled, light level category such as cashier, assembler or packager. (Tr. 400-01). Such an individual could also perform sedentary positions such as telephone solicitor. (Tr. 401). Ms. Salva testified that there were approximately 15,000 light level cashier positions in Missouri, and 800,000 nationally; 20,000 assembler positions in Missouri and 800,000 nationally; 3,000 packaging positions in Missouri and 130,000 nationally; 11,000 cashier positions in Missouri and 500,000 nationally; and 8,000 telephone solicitor positions in Missouri and 100,000 nationally. (Id).

Ms. Salva was then asked to assume a hypothetical individual of plaintiff's age, education, and work experience who could lift 10 pounds occasionally and negligible weights frequently; stand and walk for 15 minutes at a time for a total of 4 hours in an 8 hour day; sit for up to 20 minutes at a time for a total of 4 hours in an 8 hour day; required a position with a sit/stand option; could

4

perform no overhead work or bend from the waist; occasionally stoop, kneel, crouch, or crawl; and have the ability to recline from 15 to 60 minutes 2 to 4 times a day. (Tr. 401-02). Ms. Salva testified that such a person could not perform plaintiff's past work, would not have transferable skills, and there would not be work in the national economy for such an individual. (Tr. 402).

When questioned by Ms. Lawchowski, Ms. Salva clarified that an assembler and packaging positions, and telephone solicitor required only occasional reaching, and the cashier position only required reaching to the extent of handing someone their change. (Tr. 402-03).

### III. Standard of Review

Review of a final decision of the Commissioner of Social Security is limited to determining if the decision is supported by substantial evidence on the record as a whole. Mussman v. Apfel, 17 F.Supp.2d 885, 890 (S.D.Iowa 1998). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Mussman, at 890. This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal." Id. Consequently, even if the evidence may have been weighed differently, a reversal of the Secretary's decision is inappropriate when there is enough evidence in the record to support either outcome. Id.

### IV. Analysis

Plaintiff complains that the ALJ failed to fully consider the severity of his depression; failed

to properly assess his credibility; did not properly determine his residual functional capacity; and erred in concluding that he could perform other work.

Depression

Plaintiff claims that the medical record clearly indicates problems with depression, and his treating physician, Dr. Rebecca Turner, repeatedly prescribed anti-depressant medication. According to plaintiff, this was sufficient to compel the ALJ to include depression in his analysis of plaintiff's impairments, especially when assessing plaintiff's RFC.

In support of his argument, plaintiff relies on Rogers v. Massanari, 226 F.Supp.2d 1040 (E.D.Mo. 2002) to demonstrate the ALJ's error in failing to more fully consider this ailment. However, plaintiff's reliance is misplaced, for in Rogers, the ALJ had before him a psychological consultative examination, a disability report, plaintiff's hearing testimony, in addition to letters describing plaintiff's depression and suicidal thoughts. Rogers, at 1042-43. Consequently, in finding that the ALJ's findings were not supported by substantial evidence, the court held that the administrative record, including plaintiff's history of missed appointments and medication regimen, his behavior during the psychological examination, and his attitude at the evidentiary hearing unequivocally indicated the possibility that plaintiff was severely mentally impaired by something other than the documented substance abuse. Rogers, at 1046.

Similarly unpersuasive is plaintiff's reliance on Gilbert v. Apfel, 175 F.3d 602 (8th Cir. 1999). For there, the plaintiff claimed chronic depression in her application for benefits. Gilbert, at 603. Although the plaintiff in Cunningham v. Apfel, 222 F.3d 496 (8th Cir. 2000), failed to adequately develop the record, at the hearing, plaintiff testified that she had been in special

6

education classes, and subsequently dropped out of school due to academic difficulties. Cunningham, at 501. The court held that such testimony, in addition to the record replete with evidence of mental illness, borderline intellectual functioning, memory loss, and loss of cognitive ability should have alerted the ALJ to pursue questions that could have revealed the plaintiff's mental disabilities. Id. Here, plaintiff's testimony fails to indicate any mental difficulties, and other than prescriptions for Zoloft and Paxil, the medical record does not evidence mental limitations.

Plaintiff complains that his primary care physician, Dr. Rebecca Turner, first noted a diagnosis of depression on February 28, 2000, and the diagnosis continued throughout the medical records. While it is true that Dr. Turner's notes of February 28th revealed depression, Dr. Turner also states that plaintiff was feeling emotionally stable and was taking a much smaller dose of Zoloft. (Tr. 376). After plaintiff resumed a regimen of Zoloft, Dr. Turner's notes for the balance of the year only sporadically note plaintiff's depression.[1] (Tr. 371-74).

Moreover, unlike the facts in Rogers, Gilbert, and Cunningham, here, plaintiff did not note depression on the claimant questionnaire (Tr. 73-76), he did not raise depression at the hearing, and he has not sought, or been referred for, professional mental health treatment. Hensley v. Barnhart, 352 F.3d 353, 357 (8th Cir. 2003) (the mere fact that plaintiff was prescribed antidepressants on at least one occasion is not enough to require the ALJ to inquire further into the condition by ordering a psychological evaluation). Plaintiff argues, however, that notwithstanding the absence of mental health treatment, there is no medical evidence to refute this claim. While there is some merit to this

---

[1]Indeed, there are several references to plaintiff's alcohol intake, as well as Dr. Turner's opinion that plaintiff was self medicating with alcohol due to depression; although he denied suicidal thoughts ----apparently his wife was also drinking in excess. (Tr. 374). Nonetheless, in September of 2000, Dr. Turner noted that since plaintiff had quit drinking for 2 ½ weeks, he was experiencing alcohol withdrawal and delusions or hallucinations. (Tr. 372-73).

7

argument, the fact remains that, other than noting an opinion, Dr. Turner did not refer plaintiff for professional mental health treatment, and there is no evidence of a disabling condition due to depression. Horton v. Barnhart, 266 F.Supp.2d 971, 982 (S.D.Iowa 2003) (mental or emotional problems must result in a marked restriction of plaintiff's daily activities, constriction of interests, deterioration of personal habits or impaired ability to relate, to be considered disabling). A careful review of the record compels a finding that the ALJ properly excluded depression from the analysis of plaintiff's impairments.

Credibility Analysis

Plaintiff also complains that the ALJ failed to properly assess his credibility. In assessing a claimant's subjective complaints, an ALJ is required to consider all available evidence on the record as a whole and is required to make an express credibility determination. Dixon v. Barnhart, 353 F.3d 602 (8th Cir. 2003). Because of the difficulty evaluating medical symptoms such as pain and suffering, guidelines have been established for evaluating a claimant's subjective complaints. Dixon, at 605. In undertaking a credibility analysis, the ALJ is required to consider prior work records; observations by third parties and physicians regarding disability; the claimant's daily activities; the duration, frequency, and intensity of the condition; dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. Dixon, at 605; citing, Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

The ALJ considered the medical evidence and found that plaintiff began experiencing bilateral shoulder and elbow pain in April of 1999, after repeated pushing, pulling, and lifting of heavy objects at work. (Tr. 16). An MRI scan of the cervical spine revealed 2 ruptured cervical discs

8

and 2 other herniated discs. (Id). After consulting with the company physician, plaintiff underwent surgical cervical fusion, performed by Dr. Paul Arnold on May 28, 1999, followed by physical therapy and work hardening program. (Tr. 16, 103). In July of 1999, x-rays of the cervical spine revealed degenerative disc disease at the C6-7 level, and x-rays of the lumbar spine taken in August of 1999, revealed degenerative disc disease at the l4-5 level. (Tr. 125, 127).Continued pain in his left shoulder revealed degenerative arthritis, left rotator cuff tendonitis and degenerative joint disease. (Tr. 16). Plaintiff then began a regimen of anti-inflammatory medications and steroid injections. (Id).

On August 1, 2000, Dr. James Zarr, performed a functional capacity evaluation and found that plaintiff was presently lifting in the medium category of work as defined by the U.S. Department of Labor standards. (Tr. 16, 172). On August 15, 2000, Dr. Zarr released plaintiff to return to work with permanent restrictions limiting plaintiff from lifting anything greater than 40 pounds, overhead lifting of anything greater than 35 pounds, and only occasional overhead reaching and crawling, no new medications were prescribed. (Tr. 346). In a symptom questionnaire completed on March 1, 2002, Dr. Zarr noted that the pain suffered by plaintiff was moderately severe in which it constituted an impairment which seriously affected plaintiff's ability to function. (Tr. 362). Yet, Dr. Zarr further noted that the pain would only <u>occasionally</u> interfere with plaintiff's ability to maintain attention and concentration to sufficiently complete tasks in a timely manner. (Id).

The ALJ also considered the opinion of plaintiff's treating physician, Dr. Turner, who opined that plaintiff could not return to a repetitive work activity, even one with a sit/stand option and periodic rest periods in addition to a 30 minute lunch and two 15 minute breaks. (Tr. 17, 363). Based upon Dr. Turner's diagnosis and findings, plaintiff needed to lie down for substantial periods of the

9

day for relief of pain and fatigue. (Id). The ALJ assigned little weight to Dr. Turner's opinion because it was unsubstantiated by her own treatment, any treatment of record, or medications. (Tr. 17).

Medical opinions of a treating physician are normally accorded great weight, however, medical opinions must be supported by acceptable medical evidence and must not be inconsistent with other evidence on the record as a whole. Dixon v. Barnhart, 353 F.3d at 606. Here, the medical records do not support Dr. Turner's opinion that plaintiff's pain and fatigue is so severe that he must lie down for a significant portion of the day. Other than results from various blood tests, Dr. Turner's treatment record fails to show any diagnostic tests or other objective criteria upon which she based her opinion. After performing cervical fusion, Dr. Arnold's notes over a 2 year period indicate that plaintiff retained normal strength in his upper extremities with a normal reading on an MRI of his thoracic spine. (Tr. 355). After several visits to Dr. Samuelson for a second opinion, Dr. Samuelson noted that although plaintiff had persistent symptoms, he saw no need for any more aggressive orthopaedic intervention. (Tr. 136). He recommended evaluation by a physiatrist for further evaluation, as well as development of a plan for future work activities. (Id). As previously noted, plaintiff was treated by physiatrist, Dr. Zarr, who did not find, as opined by Dr. Turner, that plaintiff's impairments severely impeded his ability to perform certain work activities.

Notwithstanding the lack of medical support, plaintiff's subjective complaints of pain could not be rejected solely on this basis. Various other factors are to be considered. For instance, the ALJ also considered plaintiff's daily activities which included feeding his dogs, doing laundry once a week with a laundry shoot, grocery shopping when assisted by his wife, and intermittent hand mowing of his lawn. (Tr. 15). The ALJ further noted that plaintiff was no longer able to play softball

10

and rebuild old cars. (Id). The ALJ also considered the medication ingested by plaintiff, i.e. Aleve, which relieved the pain for a couple of hours if plaintiff did not do anything too strenuous. (Id). Failure to take anything stronger than non-prescription treatment for pain is inconsistent with a disabling impairment. Harris v. Barnhart, 356 F.3d 926 (8th Cir. 2004). Nonetheless, plaintiff reported that he had constant pain in his neck and the top rear of his right shoulder, as well as a dull throbbing pain in his hip when he sat for long periods of time. (Id). Although the ALJ found that plaintiff suffered severe impairments due to status post cervical fusion, knee and low back pain; the ALJ improperly opined that plaintiff's fatigue was "caused by his deconditioning from self-imposed inactivity." (Tr. 16). Shontos v. Barnhart, 328 F.3d 418, 427 (8th Cir. 2003) (an administrative law judge may not draw upon his own inferences from medical reports). Plaintiff's work record, however, which was pretty consistent, lent credibility. Singh v. Apfel, 222 F.3d 448, 453 (8th Cir. 2000) (an impressive work history lends credibility to a plaintiff's subjective complaints of pain).

Nevertheless, the ALJ made an adequate credibility determination supported by substantial evidence of record. Where it is possible to draw two inconsistent conclusions from the evidence, deference must be given to the Commissioner's decision. DeMaris v. Barnhart, 306 F.Supp.2d 863, 873 (N.D.Iowa 2004). As noted above, the ALJ properly considered the medical evidence submitted and found that it did not support plaintiff's complaints of disabling pain and fatigue. Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996) ("the mere fact that working may cause pain or discomfort does not mandate a finding of disability"). Further, plaintiff's ability to perform daily activities, and the fact that plaintiff finds relief from pain without the use of prescribed medications, as well as the lack of aggressive treatment all support the ALJ's decision.

11

Residual Functional Capacity

Plaintiff alleges that the ALJ failed to include the non-exertional impairments associated with depression in assessing his RFC. The RFC is a function-by-function assessment of an individual's ability to do work-related activities. Hamilton v. Barnhart, 355 F.Supp.2d 991 (E.D.Mo. 2005). The determination of RFC is a medical issue, which requires the consideration of supporting evidence of a medical professional. Hamilton, at 1005; see also, Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003). As previously noted, however, the ALJ properly gave little weight to the opinion of Dr. Turner and gave adequate reasons for doing so. It has also been determined that the ALJ did not improperly exclude plaintiff's depression as a severe impairment because, other than periodic usage of Zoloft and Paxil, plaintiff was not treated for depression, and was not referred to a psychiatric specialist for treatment. Although plaintiff points to his ingestion of Zoloft as treatment for depression, and its side effect of sleepiness, contrary to plaintiff's assertions, the only side effect indicated in Dr. Turner's notes as reported by plaintiff was stomach upset. (Tr. 370-71).

After careful consideration of all the relevant evidence in the record, the ALJ properly considered the impairments he found credible and supported by substantial evidence in determining plaintiff's RFC. Hamilton, at 1006; see also, McGeorge v. Barnhart, 321 F.3d 766, 769 (8th Cir. 2003). Thus, the ALJ determined that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; he could stand, walk, and/or sit with normal breaks and rest periods for a total of 6 hours in an 8 hour work day; and he could occasionally reach and/or crawl; but, he was prohibited from overhead work which would require a neck rotation. (Tr. 17).

Consequently, the RFC used in the hypothetical question posed to the vocational expert was supported by substantial evidence on the record as a whole. Goff v. Barnhart, 421 F.3d

12

785, 794 (8th Cir. 2005); see also, Fastner v. Barnhart, 324 F.3d 981, 987 (8th Cir. 2003). Thus, the ALJ properly determined that plaintiff could perform jobs in the light level category of which there were a significant number that existed in the regional and national economies. For this determination was supported by substantial evidence on the record. Fastner v. Barnhart, 324 F.3d 981, 987 (8th Cir. 2003).

Accordingly, it is hereby

ORDERED that plaintiff's request for judgment is DENIED, and the decision of the Commissioner of Social Security is AFFIRMED. The clerk of the court is directed to enter judgment in favor of defendant.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

February 2, 2006

Kansas City, Missouri